FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

2019 OCT -2  PM 4: 34

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                       Case No. 8:19 cv 2444 T 33 JSS

APPROXIMATELY $126,880 IN
UNITED STATES CURRENCY,

    Defendant.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America brings this complaint and alleges upon information and belief, in accordance with Supp'l Rule G(2), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, as follows:

### NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit to the United States of America, pursuant to 21 U.S.C. § 881(a)(6), approximately $126,880 in United States currency seized by law enforcement officers from a car being driven by Quenita Harris on May 23, 2019.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345, and over an

action for forfeiture by virtue of 28 U.S.C. § 1355.

3. This Court has *in rem* jurisdiction over the Defendant Funds pursuant to:

    a. 28 U.S.C. § 1355(b)(1)(A), because pertinent acts or omissions giving rise to the forfeiture occurred in the Middle District of Florida; and

    b. 28 U.S.C. § 1355(b)(1)(B), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

4. Venue is proper in the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

## THE DEFENDANT *IN REM*

5. The Defendant Funds consist of approximately $126,880 in United States currency that was seized by law enforcement officers from a BMW sedan being driven by Quenita Harris on May 23, 2019 (Defendant Funds). The U.S. Department of Homeland Security took custody of the Defendant Funds, which remain in the custody of the United States.

6. As set forth in Supp'l Rule G(3)(b)(i), the Clerk of Court must issue a warrant to arrest the Defendant Funds if they are in the government's possession, custody, or control.

## BASIS FOR FORFEITURE

7. The Defendant Funds are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because they constitute: (1) money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act.

## FACTS

8. The facts and circumstances supporting the forfeiture of the Defendant Funds have been provided by U.S. Department of Homeland Security Special Agent James R. Yost, who states as follows.

9. On May 23, 2019, Quenita Harris and Lorenzo Jovan Brown were travelling east (towards Miami) on Interstate 75 in a BMW sedan registered to Brown. Harris was driving and Brown was in the front passenger seat. A Deputy Sheriff noticed the BMW had an expired tag and pulled it over. While the deputy was explaining why he stopped the BMW, he smelled marijuana. For that reason, he asked Brown and Harris to exit the car. Once they complied, the deputy explained that he smelled marijuana and would therefore search the BMW sedan.

10. In the vehicle, the deputy found a paper Gucci bag on the front passenger floorboard. Inside the Gucci bag the deputy found a second bag which contained $106,880 in currency, a loaded firearm, a small amount of marijuana, and a wallet which contained Brown's credit cards and identification. There were no documents found that indicated the money had recently come from a bank (or any legitimate source) or any paperwork that reflected where the money might have come from. Brown admitted the firearm was his. Harris also had a handgun in her purse. The below photograph shows some of the currency (sitting atop a law enforcement vehicle) and the BMW sedan.



The following photograph shows the bag containing currency, Harris, Brown, and the BMW sedan.



11. The deputy asked to whom the currency belonged and Brown at first said it was his. Moments later, however, Brown claimed the currency belonged to Harris. Brown said there was about $120,000 in the bag and said the money was going to be used to purchase a boat in Miami. Miami is a source city for cocaine and a major money laundering hub for drug proceeds. While the deputy was speaking with Brown, a second deputy found another $20,000 on the rear floorboard of the BMW. All of the currency was bundled in currency straps.[1]

---

[1] A currency strap, also known as currency band or bill strap, is a simple paper device designed to hold a specific denomination and number of banknotes. The American Bankers Association has a standard for both value and color. All bills greater than $1 only come in straps of 100 count. The colors allow for quick accounting.

12. The denominations of the 44 bundles of currency were as follows:

| Denomination | Number of Bills | Total |
|---|---|---|
| $100 | 543 | $54,300 |
| $50 | 322 | $16,100 |
| $20 | 2,824 | $56,480 |

13. In addition to the marijuana found in the bag with the currency and firearm, Brown had marijuana in his sock, which he removed and gave to the deputy.

14. Additional deputies arrived on the scene and separated Harris and Brown before interviewing them.

15. Harris explained that she was employed with Bayshore Memory Care in Naples, Florida (an assisted living facility focused on providing memory care for individuals with Alzheimer's and other forms of dementia) where she was paid $16.50/hour.[2] Harris said she was a Certified Nursing Assistant[3] and had worked at Bayshore Memory Care for three years. Harris stated that before going to work for Bayshore Memory Care, she did private care nursing.

---

[2] Assuming a 40 hour work week, this would amount to $660/week, before taxes.
[3] A certified nursing assistant, or CNA, helps patients or clients with healthcare needs under the supervision of a Registered Nurse (RN) or a Licensed Practical Nurse (LPN).

16. Harris said she was the owner of the seized currency, which she stated was between $120,000 and $127,000. Harris claimed she had saved $55,000-$60,000 and borrowed the rest to buy a boat in Miami. Harris stated she got the borrowed portion of the currency from "different friends" and had picked it up earlier that week. When asked who she had borrowed the money from, Harris said she did not want to give the deputy their names. When pressed, Harris claimed it was two friends that loaned her the money and she insisted that she did not know how they acquired the money. Harris asserted that she did not count the money she had borrowed and claimed she had "no idea" how much money she had until the first deputy counted the currency. Harris insisted that all of the currency was her money or money she borrowed from the two friends.

17. Harris stated that she put currency straps on the money she had saved, but straps were already on the money she borrowed from her two friends. When asked where she got the currency straps, Harris at first said she didn't know – claiming "you can get them anywhere." Harris later changed her story and said she got the currency straps from Amazon.

18. Harris said it took her 15 to 20 years to save the $55,000-$60,000 that she had saved and she claimed she kept the money in boxes and "different places." She insisted that the money came from her house, not a bank or safe

deposit box.   Harris claimed to have had "problems with [her] money come up missing in the bank."

19.     Harris claimed she was going to buy the boat as a business, but she did not have a specific type of boat in mind and she had not researched where she could purchase a boat.   Harris said she was going to look for one "somewhere in Miami – anywhere but Naples."   Harris insisted she didn't know where she was going to look and claimed the friends who loaned her money were "going in on the boat."

20.     When questioned, Harris claimed she had never received money from gambling, inheritance, or an insurance settlement.   She claimed only that sometimes friends gave her money for "birthdays and stuff like that."

21.     Harris claimed she lived in an apartment and paid $1,110 per month for rent. Harris claimed that Brown did not live with her, although he fathered two of her three her children (Brown claimed to live with his parents).

22.     Towards the end of her interview, Harris said she didn't know if any of the money was Brown's.   However, she had earlier insisted that all of the currency was her money or money she borrowed from the two friends. When pressed, she said she did not think any of the money was Brown's, but she didn't know for sure.

23.     After interviewing Harris, the deputy interviewed Brown.

24.     Brown said he owned the BMW that Harris was driving and they were going to Miami to look for a boat.   When asked what kind of boat he was looking for, Brown said "a boat you can rent out . . . I don't know what kind of boat . . . I mean a nice boat." When asked whether he was looking for a sailboat, a pontoon boat, or a party boat, Brown responded that he was looking for a "party boat" and then clarified, "you gonna take whatever you find though."   Brown didn't have a particular place in Miami where he was going to look, and didn't know whether he was going to keep the boat in Miami or bring it back to Naples (his BMW did not have a tow package). Brown said that he and Harris had no plans to meet anyone in particular at any particular time.   They were just going to look for a boat once they got to Miami.

25.     When asked if any of the seized currency was his, Brown said "*that's her money, man. She saved half that money, borrowed the rest, man*." Brown claimed he had about $1,000 on his person and repeatedly and vociferously insisted, in clear and unambiguously language, that all of the seized currency was Harris's money.   Brown unequivocally asserted that none of the seized money was his.   If fact, at one point Brown grew frustrated and shouted, "it's NOT my money."

9

26. Brown admitted that he was the owner of both the loaded firearm and marijuana found in the bag that was located on the front passenger floorboard of the BMW (the same bag that contained the $106,880 and a wallet containing Brown's credit cards and identification).

27. Brown said he owned no real property and had no investments. Brown claimed he owned a tee-shirt company and worked for a construction company.

28. After interviewing Harris and Brown, deputies seized the currency and gave Harris a receipt for the currency (Brown was given nothing since he denied any interest in the currency).

29. Harris and Brown left after Harris was issued a traffic warning for the expired registration.

30. Despite the fact that Brown admitted to possessing marijuana, Brown was not arrested.

31. Records from the Florida Department of Revenue indicate that since 2003, Harris's reported wages were approximately $140,000.00.

32. Based on the totality of the circumstances, probable cause exists to believe that the Defendant Funds are subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

## CONCLUSION

38. As required by Supp'l Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, probable cause exists to believe that the Defendant Funds constitute: (1) money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act and are therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, pursuant to Supp'l Rule G, Plaintiff United States of America respectfully requests that process of forfeiture be issued against the Defendant Funds; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that the Defendant Funds be forfeited to the United States for disposition according to law; and

that the United States have such other and further relief as this case may require.

Dated: October 2, 2019

Respectfully Submitted,

MARIA CHAPA LOPEZ
United States Attorney

By: _____
JAMES A. MUENCH
Assistant United States Attorney
Florida Bar No. 472867
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: (813) 274-6000
E-mail: james.muench2@usdoj.gov

## VERIFICATION

I, James R. Yost, hereby verify and declare under penalty of perjury, that I am a U.S. Department of Homeland Security Special Agent, and pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case together with other U.S. Department of Homeland Security Special Agents and Task Force Officers.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of October, 2019.

*James R. Yost*
James R. Yost
Special Agent
U.S. Department of Homeland Security

13